*J. & W. L. Harlan* for appellants; *Morehead & Reed* for appellees.

- - - - - -

## Burks' Heirs *vs* Osborn.

### APPEAL FROM THE WASHINGTON CIRCUIT.

*Dower.    Use and Occupation.    Limitation.    Infants.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

ASSUMPSIT.

*Case* 131.

September 29.

The act of 1796, (*Stat. Law*, 573,) giving the widow a right to tarry in the mansion house and plantation thereto belonging, until her dower shall be assigned, and giving also a speedy remedy, in case she shall, in the mean time, be deforced, gives her no right beyond the reasonable operation of its own terms, construed with reference to the objects of the statute, and the right of the parties interested, as recognized by law. The widow is secured in the enjoyment, free of accountability, of the mansion house and premises attached to it, by occupancy, or by renting and receiving the issues: 7 *Mon.* 338, 642; 3 *J. J. Mar.* 48; *Hyzer* vs *Stoker*, (3 *B. Mon.* 117.) But if, without being deforced, she leave the premises unoccupied and uncontrolled by her, that is, if she abandon them, and the heirs take possession, she has no right or remedy under this provision of the

The widow, under the statute of 1798, (1 *Stat. Law*, 573,) is secured in the enjoyment of the mansion house and premises attached thereto, free from accountability for rent, and may rent it and receive the issues: (7 *Mon.* 338, 642, 3 *J. J. Marshall*, 41; 3 *B. Mon.* 117.) But if she abandon the premises the heirs may take the possession and will not be accountable to her for rents.

statute, but can claim her dower only, and one third of the annual value.

In this case, the widow of Samuel Burks having removed, with her infant children, to a distant county, leaving the mansion house and farm unoccupied, and, so far as appears, uncontrolled by her for a year or more, if it were conceded that, by returning to it, or resuming the enjoyment or control of it, by leasing it or otherwise, she would be in under the statutory provision referred to, and might tarry until her dower should be assigned, still it does not follow, that an entry upon the vacant possession by the heirs, or one acting for them, would be a deforcement of the widow, for which she would have remedy. The statute intends to secure to the widow, the actual enjoyment of the premises, as a means of coercing the heirs to a speedy assignment of dower. Where the heirs are infants, and especially when the widow is their guardian, or they have none, this right may be exercised to their prejudice, and without remedy. But there is no reason for extending, by construction, and to their prejudice, a right that was intended to be merely conservative. In the case last referred to, (3 *B. Monroe*, 118,) the Court, after conceding the right of the widow to have *remained* in possession, or to have *received* the rents without account, until her dower was assigned, say that, after acquiescing in the holding by the heirs and purchaser, for more than five years, she is entitled in equity to no more, (on account of back rents,) than she would have received, had her dower been assigned to her. And this conclusion is adopted, although it was not satisfactorily proved that the widow, in leaving the premises, had abandoned them.

In the case before us, after the widow had left the premises for about one year, the administrator of her husband, in that character, leased them to Osborn for one year, by written lease executed by both parties. He was the father of the widow, and grandfather of the infant heirs, all of whom appear to have been then residing with him in a distant part of the State. But there is no evidence that he professed to act for the wid

If a widow abandon the mansion house and premises and the heirs enter upon the vacant premises, it is not a deforcement, and she is not entitled to recover rents of the heirs.

ow, or any one else, except such as is prescribed by the written lease, and there is no evidence that, from the time of her leaving the premises in 1833, up to the present period, the widow has ever made any claim, either to the possession of the land, or to the rents or issues. On the contrary, the heirs, after an interval of some ten or twelve years, when some of them had arrived at age, claimed and obtained the possession of the land from the tenants or vendees of Osborn, and, as it would seem, with the acquiescence or co-operation of the second husband of their mother.

Upon these facts, we are of opinion that, although the administrator, as such, had no right to lease the land of his intestate, yet, as he did lease it in that character, and without reference to any other, there is no presumption that he leased it for the widow, or for his own benefit, or for the benefit of any but the representatives of his intestate. This presumption should especially prevail in favor of infant heirs. And it is corroborated, if corroboration were necessary, by the non-claim and long acquiescence of the widow.

The lease having been made for the benefit of the heirs, and disposing of their land, the relation which it established enured to their benefit. And although they could not have sued in their own names for the rent reserved by the written contract, if it was expressly payable to the administrator, yet the lessee undoubtedly became their tenant. And upon his holding over, after the expiration of the term, they might remove him; or if he was permitted to continue in possession, without any express or written contract to pay rent to their agent, being their tenant upon their land, the law would imply a promise to pay them for the use and occupation. It is, of course, to be understood, not that the infant heirs were bound by the lease, and the other acts of the administrator affecting the land, but that he is to be considered as acting for their benefit, and that they have a right to recognize and take advantage of his acts, as if he had been their authorized agent.

Under these views, there was no ground in this case, as it stands on the evidence in the record, for submit-

---

*Margin notes:*

BURKS' HEIRS
vs
OSBORN.

Where a widow abandons the mansion house and premises, and the grand-father of the heirs leased the premises to tenants, the presumption should be, that it was for the benefit of the heirs.

—And in such case the heirs, upon arriving at full age, might recover the possession from the lessee or sub-lessee of the grand-father, or the rents for the premises.

Where a grand-father adm'r. but not guardian,

leased out the land of his grand children——Held that they were not parties to the lease, they, on arriving at full age, might affirm the contract and recover for the use and occupation.

ting to the jury the question whether the administrator acted for the heirs or for the widow, or for others. He must be assumed to have acted for the infant heirs, and they may claim the benefit of his acts, as far as they elect to do so. And especially they, and not the widow, are entitled to sue upon the implied promise, if there be one, to pay for the use and occupation of their land. If they recover, the widow's claim for rent, if she have one, will be against them, though in a direct proceeding for dower, she might, perhaps, recover one third of the back rents from the tenants, or those who had received the issues and profits of the land. The instructions on these subjects were inconsistent with these views, and are, therefore, erroneous. As Osborn had rented the land, by express contract, from the administrator, he was bound to pay the rent during the continuance of the lease, although he placed others in possession. And the promise to pay rent, implied from a permissive holding over after the expiration of the express lease, if there be any, arises also against him, so long as he, or those whom he has placed in possession, are permitted to hold. The statute of limitations having been pleaded, and the plaintiffs having replied by simple traverse, without bringing themselves within any of the exceptions of the statute, they were, of course, precluded from recovering rent for more than five years before the commencement of the suit. Their right of recovering even for that period, or any part of it, depends upon the question whether the circumstances under which Osborn, or those holding from him, had held and claimed the possession for five years before the suit was instituted, were such as to repel the implication of a promise to pay rent.

A lessee holding over after the expiration of an express lease, is bound to pay rent, and if he put another into the possession, the same implication arises that he is to pay the

To establish this ground of defence, the defendants introduced evidence conducing to prove, that some time after the expiration of the express lease under which Osborn had obtained the possession, and while he was holding it by permission or sufferance, a contract was made between him and the administrator, from whom he had received the lease, that in case the administrator should, as was anticipated, purchase the land at an ex-

pected sale, under execution or decree, for a debt to which it was liable, he would sell it to Osburn at a stipulated price. The land never was sold under decree or execution, nor in any other manner, within the terms of the contract. Of course, the condition never happened on which this contract depended, and there was no other direct evidence of a purchase by Osborn `from the administrator, who had no right to sell, or from any other person, although there was some evidence intended to show, that he had paid money which might be applied to the purchase. But it was stated by several witnesses, that he claimed the land as his own, (from about the date of the contract referred to,) and that it was notorious in the neighborhood that he had purchased it, and claimed and leased it as his own. It also appeared, that he had sold and conveyed a small part of it.

The evidence as to the notoriety of Osborn's purchase and claim, was objected to, but admitted as tending to prove that the administrator and widow and heirs, had notice of it, and to repel the inference of a tenancy to them, or either of them, and of an implied promise to pay rent to the plaintiffs. And the Court instructed the jury, in substance, that if, for five years before the commencement of the suit, Osborn claimed the land as his own, and if, from all the facts and circumstances, they believed that the plaintiffs, or any of them, had knowledge of his claim for the same period, the law was for the defendant.

The general principle on which this instruction is founded, is, no doubt, true. If a tenant holding over by sufferance, were to declare to his landlord that he claimed the land as his own, and would no longer hold under him or be his tenant, but would hold the possession for himself, it would seem that, although he could not thereby relieve himself from his obligation to restore the possession, or from the estoppel to deny his landlord's title, until it had been barred by lapse of time, such renunciation of his tenancy and assumption of hostility, would repel the future implication of a promise to pay rent, which might otherwise arise every year. We suppose, too, that if the tenant, without any direct

If a tenant assume to hold adversely to his landlord, and the latter have notice thereof, though such adverse holding might not bar the landlord from recovering possession until the statute of limitation had fully run: yet it would repel the presumption or implication that he had agreed to pay rent, and if five years and six months had

Burk's heirs
vs
Osborn.

run after such
adverse claim,
before suit, no
suit could be
maintained for
rent.

communication to the landlord, openly and notoriously assumes this hostile attitude and independent claim, and treats the land as his own, this state of things, as soon as it becomes known to the landlord, will constitute an adverse possession, available not only as the period from which the statute of limitations will run, but also for the purpose of repelling the implication of a future promise to pay rent, in the same manner as if the renunciation were made directly to the landlord. And, in a general point of view, it would seem to be true that, if this knowledge is brought home to the landlord, at a point of time five years before the commencement of the suit for rent, his recovery would be wholly barred, on the ground that no promise to pay rent would be implied within the five years, and that the demand founded on the previous implied promise, would be barred by the statute of limitations.

But as a tenant holding over by permission, becomes a tenant from year to year, and can only terminate his tenancy and obligation to pay rent, by six months notice before the end of the current year of the tenancy, his renunciation, whenever made, could not release him from the obligation to pay rent for the current year, nor, unless made six months before the end of that year, could it release him from the obligation to pay for the rent of succeeding years occupation. And as to such years as he was bound to pay rent for, the law would imply a promise to pay it, notwithstanding his renunciation. Then, although five years might elapse from the date either of the implied promise, or of the renunciation, the landlord may recover the rent for the year in which the renunciation was made, or became known to him, and, under certain circumstances, for the succeeding year also, unless the period at which the rent was payable, according to the implied promise, was itself more than five years before the commencement of the suit. The instruction is, therefore, broader in this respect, than is authorized by the principle on which it is based.

Another objection to the instruction is, that it affects the plaintiffs with the consequence of a knowledge by

any of them of the hostile attitude of Osborn, without reference to the question, whether the individual plaintiff or plaintiffs who may have had this knowledge, were, at the time, and five years before the commencement of the suit, of full age.    The renunciation, if made to, or coming to the knowledge of a minor, could have no effect upon his rights, or upon those of his co-heirs, until he arrived at full age; and should not be made the ground of inferring that others of them, then of full age, derived knowledge of the fact from him.    As the plaintiffs sue upon a joint right and a joint promise, any circumstance which shows that there could have been no implied promise to one or more of them, disproves the joint promise alleged, and defeats the recovery of all.    But as the renunciation of the tenancy, if made to an infant, could not, of itself, change the relations or rights of the immediate parties, it should not, by presumption, be made to operate upon their adult co-heirs, and thus, indirectly, to defeat the infants' rights, which it could not directly affect.    The landlords, being at one time infants, a promise was implied at the commencement of each year, to pay rent for the occupation during that year, notwithstanding the hostile attitude assumed by the tenant, until that attitude became known to some one or more of them, being of full age.    After such knowledge, no future promise would arise, unless for the next succeeding year, but the previous promise to pay for past occupation, and for occupation during the current year, and under the circumstances above indicated, for the next succeeding year, would still exist, or be implied, and would be enforcible, except so far as they might be barred by the lapse of five years between the time when they should have been performed, and the commencement of the suit.    The statute of limitations has no effect in determining the question whether there was an implied promise or not, but operates upon the right of recovery, even if there were such promise.

With regard to the evidence admissible to prove the hostile attitude of Osburn, and a knowledge of it by the plaintiffs, we are of opinion that it was not necessary

for him to show that he had actually purchased the land, or had an available title to it, but it was sufficient for him to prove an open, public, and notorious claim and use of the land as his own, adverse to, or independently of, the title of the plaintiffs.

But a claim under the conditional contract above referred to, implying a future and contingent acquisition of the title of the plaintiffs, could not, of itself, put him in an attitude hostile to that title. He may, however, have claimed to be the owner of the land, without even a colorable title; and if he renounced his tenancy, though without a plausible pretext, his renunciation might be effectual, as above explained, when it became known to the plaintiffs, or such of them as were of full age. They could not, however, have been affected by the knowledge of the administrator, or of their mother, of whom the last never acted as their agent, and the first was never authorized to act for them in relation to the land, had never done so in form, and had long ceased to do so in fact. And, certainly, if he so far betrayed his trust as to authorize, or in any manner to sanction the claim of Osborn in opposition to them, his knowledge of the claim should not affect them with knowledge, or be a ground for presuming it. And although the notoriety of Osborn's claim and acts of ownership in the neighborhood of the land might, in connection with other circumstances tending, more directly, to prove knowledge, or opportunity and probability of knowledge, on the part of the plaintiffs, be admissible and sufficient for that purpose, we are of opinion that, considering their distance from the land, such notoriety alone would not authorize the presumption of knowledge by them, unless from the period at which they, or some of them, attained full age, it had continued for such a length of time after that period, as would be sufficient to bar their right to the land. An acquiescence for twenty years might, as decided in the case of *Farrow's Heirs* vs *Edmondson*, (4 *B. Monroe*, 606,) be sufficient to authorize a presumption of notice of the adverse possession from the commencement of that period, an acquiescence for a shorter period would not au-

If an entry be made upon the land of infants under their title and as their tenants, no renunciation of their title, whilst they are infants, will prejudice their right to recover rents whilst they are minors.

thorize a presumption of knowledge at any particular time during that period. There must, therefore, be some more direct evidence, fixing the knowledge upon the plaintiffs at some period before the commencement of the suit, or the jury would be left merely to guess whether, or how long, they had had such knowledge. Under these views, the evidence of the notoriety of Osborn's claim may not have been inadmissible, but as there had not been twenty years possession, its admission should have been qualified, by telling the jury that, standing alone, it could not prove notice.

Whether there was other evidence in the case which would authorize the conclusion that the plaintiffs had had notice five years before the institution of the suit, we need not enquire. Under the various instructions of the Court, it cannot be assumed that the verdict was founded upon any such conclusion. But as, in view of the principles asserted in this opinion, each of the instructions given, on motion of the defendant, was erroneous, and the qualification added to those moved by the plaintiffs, was misleading and prejudicial, a new trial should have been granted.

Wherefore, the judgment is reversed, and the cause remanded for a new trial, in conformity with this opinion.

*Rountree & Fogle* for appellants; *Shuck* for appellee.